Caruthers, J.,
delivered the opinion of the Court.
*339 The guilt of the plaintiffs in error, of a most aggravated assault and battery, is clearly estalished by the proof in this case. They were indicted with two others, (as to whom there was a mistrial) for going to the house of one Green A. Berry, with their faces blackened, and otherwise disguised, at a late hour of the night, and taking him forcibly from the bed of his wife and chil dren, and at a short distance from his house, in the hearing of his family, inflicting upon him with switches, a very severe whipping, by which he was much injured and disabled, for a considerable time. For this lawless and savage barbarity, there is no cause shown in the proof. From what we see in the record, we are only surprised that the hand of the law was not laid much more heavily upon them, for an outrage, so monstrous.
It is an instance of mob or lynch law so odious and alarming in a civilized community. If tolerated, no -one can feel safe, for it confounds the innocent with the guilty. Its victims are condemned unheard, and a deep reproach is thereby brought upon the law, and its protective power. It is calculated to fill the land with violence, and render our most sacred rights insecure. Such deeds should never fail to bring upon the lawless perpetrators, when detected, the severest punishment which the law allows. The highest fines and the longest imprisonment, should be invariably inflicted in all such cases, without regard to the character of the injury thus attempted to be avenged. The law is sufficient for the redress of all wrongs, and to it alone, the injured should appeal. No man, or set of men, should be permitted with impunity, in a country of law, to take vengeance into their own hands.
*340 But, a constitutional question is raised in their defense, upon the ground of a want of jurisdiction of the offense in the county of Coffee, where they were indicted and convicted. It is alleged that the place where the offense was committed, is in the county of Franklin, and not Coffee. The proof upon this point is conflicting, and it was left to the jury to decide. To clear the case of all difficulty, as it was certain that the place of the crime, if not in Coffee, was within one-fourth of a mile of the line. The State relied upon a provision of the Code: sec. 4976, in these words:
“ When an offense is committed on the boundary of two or more counties, or ivithin a quarter of a mile thereof, the jurisdiction is in either county.”
In the Declaration of Rights, Art. 1, Sec. 9, is this provision, that the accused shall have a right, “ in prosecutions. by indictment or presentment,” to “a speedy public trial, by an impartial jury of the county or district in which the crime shall have been committed.”
His Honor,, the Circuit Judge, expressed doubts as to the constitutionaltv of this section of the Code, but thought it best to conform to it, in his charge, and refer the question to- this Court for its decision, as that would settle the question for the whole State.
The Code in sec. 5125, requires that “ the proof phall show a state of facts bringing the offense within the jurisdiction of the county in which the indictment was preferred.” This would seem to be in conflict with the other section, by which it need not be shown to have been within the county, but it will do to prove that it was in another county, so that it was not more than a quarter of a mile from the line. *341 ■The Legislature, and revisors, seem to ' have been strongly intent upon the prevention of the escape of offenders, upon technicalities, or anything not touching the merits.
This Court has pursued the same policy so far as it was possible for it to go, consistent with the rules by which it felt bound to be governed. All reflecting men, whether professional or non-professional, had become disgusted with the administration of the criminal law, on account of the senseless and riged rules which seemed to have been adopted, solely to favor the guilty, and defeat the punishment of offenders.
The reform has been most salutary and beneficial. We are strongly disposed to carry forward the great improvement, and not in any way, arrest it, unless we are conducted to barriers, which we cannot surmount. When the fundamental law rises up before us, ■ we •must stop, let the consequences be what they may.
The evil intended to be remedied by sec. 4976, was, that where crimes were committed on, or near a county line, it might turn out in the proof, after a fair and expensive trial had fully established the guilt of a defendant, that the indictment was in the wrong county, and the prosecution would be defeated on the ground alone, that the prosecution was in the wrong county. A few yards or feet would save the greatest offenders from punishment, as the constitution forbids that a man should be put a second time in jeopardy of life or limb, for the same offense: Art: 1, sec. 10. It was for this very commendable reason, a margin of one-fourth of a mile was given by the Code for the venue. It ought to be maintained, if it could be, under *342 the constitution. But can it be? Is it not in direct conflict ?
The worst criminals have their rights. Some of them are enumerated in the section of the constitution under construction. They must be secured as effectually as any other constitutional rights. One of these rights, is, to be tried by an impartial jury “ of the county or district,” in which the offense has been conr mitted. This Legislative provision is, that he shall not, in all cases, have that right. But that, lie may be indicted, and tried by a jury of a different county, in the given case. If it be no infraction of this right whore the place of the crime is within one-fourth of a mile from the lino, it would not be, if it were one or ten miles. The case is very strongly put in the constitution: — The accused shall have the right to be tried, &c. The word “ district,” does not aid the argument. That had reference to the state of things under the old constitution, at a time when there was only one Court for several counties, constituting what was called a district. It does not apply to Circuits. It was carried into the present constitution, by copying from the old, without noticing the change which had taken place in our judicial system, by which a Circuit Court was held in every county. Since that was done, the word district in this connection, has no application, and nothing to operate upon.
But, it is argued, that this construction would defeat and annul all the laws on the subject of a change of venue in criminal cases. We do not think so, and adhere to the decision in Dula vs. The State, 8 Yerg., 512, in which those acts are held to be allowed by the con *343 stitution. The reasoning in that case, is entirely satisfactory. This is a very different question. Those acts are made for the benefit, and to enlarge the rights of the accused. The constitution does not say that no^ other county shall try him, or have jurisdiction of the case, but only that he shall have a right to be tried where the offense is charged to have been committed. The Legislature says, in these Acts, now a part of the Code, sec. 5195, that, if an impartial jury cannot be had there, and that is made to appear, by the affidavit of the defendant and others, or by the observation of the Court in attempting to get a jury, the case may be sent to another county, not obnoxious to the same objections. Those acts provide that the accused shall not be deprived of the right to a “speedy public trial by an impartial jury,” because, or where, such a trial and jury cannot be had in the county of the offense. This whole section in the Declaration of Rights, is for his benefit, and so are the acts allowing a change of venue in the cases prescribed. There can be no question of this, where the accused applies for, or consents to, the change. How it would be where it is done without or against his consent, either expressed or implied, it might be improper now to say, as that point is not involved, necessarily, in this discussion. But in those cases, it will be observed, the prosecution is instituted in the proper county, and subsequent events render it necessary to change the form of trial, to protect the constitutional rights of the accused to a speedy impartial trial, or prevent a failure of justice.
But in this case, the right to be indicted, and have the opportunity of being tried in the county designated in the constitution, where his rights are enumerated, is taken *344 from him, and he is forced to submit to an indictment and trial in a different county from that in which the offense was committed.
Without further argument, and against our inclination, we are constrained to hold that this section of the Code is unconstitutional and void.
But, we are gratified that our judgment on this question may not necessarily shield these great offenders from justice, as it would seem to us, that the proof in the record would be sufficient to satisfy.a jury that the venue is correctly laid, and that a correct charge on this question would have produced the same result. It would seem strange that such a fact could not be put beyond reasonable doubt, one way or the other. This may be done on another trial. But let this bo as it may, we are bound, by our views on the question discussed, to grant a new trial.